# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

TOURMALINE MANAGEMENT LLC, a )
Delaware limited liability company, )
                                     )
           Plaintiff,               )    C.A. No. 1:25-cv-00740-MN
                                       )
          v.                      )    **JURY TRIAL DEMANDED**
                                       )
TOURMALINE CAPITAL PARTNERS, )
LLC, a Delaware limited liability company; )
and DOES 1-10, inclusive, )
                                       )
          Defendants.            )

TOURMALINE CAPITAL PARTNERS, )
LLC, a Delaware limited liability company, )
                                       )
                                       )
        Counterclaim-Plaintiff,      )
                                       )
          v.                      )
                                       )
TOURMALINE MANAGEMENT LLC, a )
Delaware limited liability company, )
                                       )
        Counterclaim-Defendant.    )

## DEFENDANT/COUNTERCLAIM-PLAINTIFF
## TOURMALINE CAPITAL PARTNERS, LLC'S ANSWER AND COUNTERCLAIM

*Of Counsel:*
Jonathan W. Thomas
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9219
jonathan.thomas@gtlaw.com

GREENBERG TRAURIG, LLP
Benjamin Schladweiler (#4601)
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
(302) 661-7352
schladweilerb@gtlaw.com

*Counsel for Defendant Tourmaline Capital
Partners, LLC*

Dated: August 7, 2025

Pursuant to FED. R. CIV. P. 12, as well as this Court's July 7, 2025, Order (Doc. No. 13), Defendant/Counterclaim-Plaintiff Tourmaline Capital Partners, LLC ("Tourmaline Capital"), by and through its undersigned counsel, hereby responds to the June 13, 2025, Complaint of Plaintiff Tourmaline Management LLC ("Plaintiff") in the above-captioned action (Doc. No. 1). Unless indicated otherwise herein, Tourmaline Capital responds to the allegations in the Complaint based on knowledge of its own actions and on information and belief as to all other matters. The numbered paragraphs and subheadings below are for convenience purposes only and correspond to the numbered paragraph and subheadings in the Complaint.

## NATURE OF THE CLAMS

1. Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph One of the Complaint and, therefore, denies the same.

2. Denied.

3. Tourmaline Capital denies the allegations in the first sentence of Paragraph Three of the Complaint. Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in the second sentence of Paragraph Three of the Complaint and, therefore, denies the same.

## PARTIES

4. Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph Four of the Complaint and, therefore, denies the same.

5. Admitted.

6.      There are no allegations in the first or second sentences of Paragraph Six of the Complaint that concern Tourmaline Capital.  Accordingly, Tourmaline Capital does not have to respond substantively to the allegations in the first or second sentence of Paragraph Six of the Complaint.  Tourmaline Capital denies the allegations in the third sentence of Paragraph Six of the Complaint.

7.      There are no substantive allegations in Paragraph Seven of the Complaint; however, to the extent the allegations in Paragraph Seven of the Complaint suggest or imply that there is any type of association or connection between Tourmaline Capital and the "Doe Defendants" (as defined in Paragraph Six of the Complaint) and/or that Tourmaline Capital is somehow liable for the Doe Defendants' allegedly unlawful conduct, denied.

8.      Denied as to Tourmaline Capital.

### JURISDICTION AND VENUE

9.      Tourmaline Capital admits that Plaintiff's claims in this case arise "under the trademark laws of the United States"; however, to the extent the allegations in the first sentence of Paragraph Nine of the Complaint suggest that Tourmaline Capital has violated the trademark laws of the United States, denied.  Tourmaline Capital admits the allegations in the second sentence of Paragraph Nine of the Complaint.

10.      Admitted as to Tourmaline Capital.

11.      Admitted as to Tourmaline Capital.

### [ALLEGED] FACTUAL BACKGROUND

12.      Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 12 of the Complaint and, therefore, denies the same.

13.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 13 of the Complaint and, therefore, denies the same.

14.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 14 of the Complaint and, therefore, denies the same.

15.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 15 of the Complaint and, therefore, denies the same.

16.     Tourmaline Capital denies the allegations in the first sentence of Paragraph 16 of the Complaint.   Regarding the allegations in the second and third sentences of Paragraph 16 of the Complaint, Tourmaline Capital denies that the applications referenced therein are "Infringing Applications"; otherwise, Tourmaline Capital admits the allegations in the second and third sentences of Paragraph 16 of the Complaint.

17.     Denied.

18.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 18 of the Complaint and, therefore, denies the same.

19.     Denied.

20.     Denied.

21.     Denied.

22.     Denied.

23.     Tourmaline Capital admits that Plaintiff sent it a letter dated May 13, 2024; otherwise, Tourmaline Capital denies the allegations in Paragraph 23 of the Complaint.

24.     Tourmaline Capital admits that Plaintiff sent it an email on June 20, 2024; otherwise, Tourmaline Capital denies the allegations in the first sentence of Paragraph 24 of the Complaint.   Tourmaline Capital admits the allegations in the second sentence of Paragraph 24 of the Complaint.

25.     Denied.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement – 15 U.S.C. § 1125(a))

26.     Tourmaline Capital repeats its responses to the allegations in Paragraph 1-25 of the Complaint as though set forth fully herein.

27.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 27 of the Complaint and, therefore, denies the same.

28.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 28 of the Complaint and, therefore, denies the same.

29.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 29 of the Complaint and, therefore, denies the same.

30.     Tourmaline Capital lacks sufficient knowledge and information to form a belief about the truth or falsity of the allegations in Paragraph 30 of the Complaint and, therefore, denies the same.

31.     Denied.

32.     Denied.

33.     Denied.

34.     Denied.

35.     Denied.

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition – 15 U.S.C. § 1125(a))

36.     Tourmaline Capital repeats its responses to the allegations in Paragraph 1-35 of the Complaint as though set forth fully herein.

37.     Denied.

38.     Denied.

39.     Denied.

40.     Denied.

### TOURMALINE CAPITAL'S DEFENSES AND AFFIRMATIVE DEFENSE

As and for Tourmaline Capital's Defenses and Affirmative Defense to the Complaint, Tourmaline Capital alleges as follows:

#### First Defense

Each count of the Complaint fails to state a claim against Tourmaline Capital upon which this Court could grant Plaintiff any relief.

#### Second Defense

Plaintiff is not entitled to the relief requested in the Complaint, in whole or in part, because Tourmaline Capital's conduct complained of in the Complaint is not likely to cause confusion, deceit, and/or mistake among prospective customers and/or actual customers at the initial-interest

stage, the point-of-sale, and/or in the post-sale context about the source, affiliation, approval, association, characteristics, connection, endorsement, nature, origin, qualities, and/or sponsorship of Plaintiff and/or Tourmaline Capital's services.   For example, the crowded field of third-party "Tourmaline" uses in the United States renders Plaintiff's asserted TOURMALINE and TOURMALINE CAPITAL marks weak and entitled to protection against only closely similar marks for closely similar goods and or services, which is not the case here.   The parties use different marks to offer different services to different customers in different advertising and trade channels.   The parties also have sophisticated and discerning customers.

## Third Defense

Plaintiff is not entitled to the relief requested in the Complaint, in whole or in part, because Tourmaline Capital's conduct complained of in the Complaint has not directly and/or proximately caused Plaintiff to suffer any injury and/or damages.   For example, the parties offer different services to different customers.   Consequently, and on information and belief, Tourmaline Capital's conduct complained of in the Complaint has not directly and/or proximately caused Plaintiff to lose sales, lose profits, or suffer any other type of monetary and/or reputational damage that is recoverable under the Lanham Act.

## Affirmative Defense

Plaintiff is not entitled to the relief requested in the Complaint, in whole or in part, based on the doctrines of waiver, laches, acquiescence, and/or estoppel.   For example, Tourmaline Capital had been using its allegedly infringing marks for more than three years before Plaintiff alleged that Tourmaline Capital's marks were infringing Plaintiff's asserted marks.   As another example, Plaintiff waited nearly a year to file this lawsuit after alleging in May-June 2024 that Tourmaline Capital's marks allegedly infringe Plaintiff's asserted marks.

## TOURMALINE CAPITAL'S COUNTERCLAIM

As and for Defendant/Counterclaim-Plaintiff Tourmaline Capital's Counterclaim against Plaintiff/Counterclaim-Defendant, Tourmaline Capital hereby alleges as follows based on knowledge of its own actions and on information and belief as to all other matters (unless indicated otherwise herein):

### NATURE OF COUNTERCLAIM

1.    Tourmaline Capital brings this Counterclaim to remove the cloud over its business and TOURMALINE Marks (as defined *infra*) that Plaintiff has brought by filing this lawsuit.

2.    In the Complaint, Plaintiff alleges that Tourmaline Capital's use of the TOURMALINE Marks allegedly infringes Plaintiff's asserted trademark rights in TOURMALINE and TOURMALINE CAPITAL and constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1).   On information and belief, Tourmaline Capital's use of its TOURMALINE Marks does not infringe Plaintiff's asserted marks or constitute unfair competition because, *inter alia*:

    a.    <u>Tourmaline Capital adopted its name and marks in good faith</u>.   Tourmaline Capital adopted its name and TOURMALINE Marks as an homage to Tourmaline Beach in San Diego, California, which is close to where one of its founders grew up.   Moreover, at the time Tourmaline Capital adopted its name and TOURMALINE Marks, it was not aware that Plaintiff claimed to own trademark rights in the word "Tourmaline."

    b.    <u>Plaintiff's asserted marks are weak</u>.   Plaintiff and Tourmaline Capital are two of many entities in the United States that use "Tourmaline"-formative marks and terms, including, for example, in the real estate and investment industries.   On information and belief, this crowded field renders Plaintiff's asserted TOURMALINE and TOURMALINE CAPITAL

marks weak and entitled to protection from alleged infringement by only closely similar marks used for closely similar services, which is not the case here.

c. <u>The parties' marks create different overall impressions in the marketplace</u>. As shown below, the parties' marks create different overall impressions in the marketplace:



d. <u>The parties offer different services</u>. Tourmaline Capital invests in, uplevels, and manages office properties. Plaintiff admittedly does not invest in offices. In stark contrast to Tourmaline Capital, Plaintiff invests in and manages shopping centers, which Tourmaline Capital has never done and has no intention of doing.

e. <u>The parties use different advertising and trade channels</u>. The parties advertise their services on separate websites and, on information and belief, attend separate conferences and meetings.

f. <u>The parties have sophisticated and discerning customers</u>. Tourmaline Capital's customers—*i.e.*, the tenants in its offices—are sophisticated entities that have multiple interactions with Tourmaline Capital before signing a lease in one of Tourmaline Capital's offices. Likewise, Tourmaline Capital's investors—*e.g.*, large, private-equity funds—and lenders are sophisticated entities that have numerous interactions with Tourmaline Capital before and after investing in one of its offices. On information and belief, Plaintiff's customers, investors, and/or lenders also are sophisticated and discerning.

g. <u>Tourmaline Capital is not aware of any actual confusion</u>. Tourmaline Capital is not aware of its TOURMALINE Marks causing any confusion among Tourmaline Capital's customers, investors, or lenders.

3.      For these reasons, and those alleged *infra*, Tourmaline Capital asserts this Counterclaim for a declaration that the use of its TOURMALINE Marks does not constitute trademark infringement or unfair competition in violation of 15 U.S.C. §§ 1114 or 1125(a)(1).

## PARTIES

4.      According to Paragraph Four of the Complaint, "Plaintiff is a corporation duly organized under the laws of the State of Delaware" and has "an office and place of business in San Diego County, California."

5.      Tourmaline Capital is a Delaware limited liability company and maintains its principal place of business at 15-31 Morris Avenue, Suite 229, Bryn Mawr, Pennsylvania 19010.

## JURISDICTION

6.      Given Plaintiff's allegations in the Complaint, there is an actual controversy between the parties, which this Court can resolve by declaring that Tourmaline Capital's conduct complained of in the Complaint is lawful.  Based on the foregoing, this Court has jurisdiction over the Counterclaims in this action pursuant to the Declaratory Judgment Act, to wit, 28 U.S.C. § 2201(a).

7.      This Counterclaim seeks a declaration of no trademark infringement and no unfair competition under the U.S. Trademark Act, to wit, 15 U.S.C. 1051, *et seq*.  Accordingly, this Court has subject matter, original, and supplemental jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331, 1338(a), and 1367(a), and 15 U.S.C. § 1121(a).

8.      Exercising personal jurisdiction over Plaintiff in this judicial district would comport with fair play and substantial justice given Plaintiff's: (i) status as a Delaware corporation and (ii) commencement of this lawsuit in this District.

9.     Pursuant to 28 U.S.C. § 1391(b)(2), this District is the proper venue for Tourmaline Capital's Counterclaim because a substantial part of the events giving rise to those claims occurred in this judicial district.

10.     Pursuant to 28 U.S.C. § 1391(b)(3), this District also is the proper venue for Tourmaline Capital's Counterclaim because Plaintiff is subject to personal jurisdiction in this judicial district.

## FACTS RELEVANT TO COUNTERCLAIM

### A.  Tourmaline Capital's Founding and Good-Faith Selection of its Name

11.     By mid-to-late 2020, the COVID pandemic had reduced the price of office properties as workers sheltered in place at their homes.  Tourmaline Capital's founders anticipated that, over time, workers would return to office buildings, which, in turn, would increase the demand for office properties.  Based on this anticipation, Tourmaline Capital's founders decided to form a company in mid-to-late 2020 that would invest in, uplevel, and manage office properties.

12.     When seeking a name for the company that would become Tourmaline Capital, its founders thought about using their initials as the company's name.  They decided not to use their initials as the company's name because they believed it sounded clunky and not marketable.

13.     As another possible name for the company that would become Tourmaline Capital, one of its founders proposed "Bird Rock," which is a neighborhood close to where the founder grew up in La Jolla—a neighborhood in San Diego, California.  The founders decided not to name their company "Bird Rock" because they felt it sounded too esoteric.  The founders also did not like the inclusion of the word "bird" in a company's name.

14.     Tourmaline Beach also is close to where one of Tourmaline Capital's founders grew up in La Jolla.  Unlike the founders' initials and "Bird Rock," the founders of Tourmaline

Capital thought that "Tourmaline" sounded enigmatic. They also liked that "Tourmaline" referenced the beach, which they thought was distinguishing and paid homage to where one of their founders grew up.

15.     Before adopting "Tourmaline" as a trade name and mark, Tourmaline Capital's founders worked with their outside counsel to conduct a trademark search in late 2020.  The search revealed several "Tourmaline"-formative companies.  The search did not reveal that Plaintiff owned any pending trademark applications or trademark registrations for "Tourmaline"-formative words in late 2020. That is because Plaintiff did not apply to register any "Tourmaline"-formative words as a trademark with the United States Patent and Trademark Office until more than three years later on January 20, 2024, which is when Plaintiff filed two applications to register "Tourmaline Capital" as a mark.

16.     Given the crowded field of third-party "Tourmaline"-formative businesses, Tourmaline Capital believed that it could adopt "Tourmaline" as a name and mark without violating any third party's alleged trademark rights in a "Tourmaline"-formative word.

17.     Tourmaline Capital Partners was subsequently founded in January 2021 in metro Philadelphia, Pennsylvania, where it maintains its headquarters.

**B. Tourmaline Capital's Good-Faith Adoption of its Distinctive TOURMALINE Marks**

18.     As a new company, Tourmaline Capital engaged a brand consultant to assist with creating a strategy for Tourmaline Capital that defined its characteristics of being an innovative, energetic, attentive, and accountable company.

19.     After identifying Tourmaline Capital's brand strategy, it wanted to define its visual identity.   To do so, Tourmaline Capital engaged a designer to create a design, logo, and font that

captured the bold, youthfulness of Tourmaline Capital while still having a timeless style. The result was the logos shown below:



(the "TOURMALINE Logos").

20. In addition to the TOURMALINE Logos, Tourmaline Capital adopted and uses: (i) the word mark "TOURMALINE CAPITAL PARTNERS"; (ii) the word mark "TOURMALINE"; and this stylized "T"  (together with the TOURMALINE Logos, the "TOURMALINE Marks").

**C. Tourmaline Capital Uses its Distinctive TOURMALINE Marks in Connection With Investing in Office Properties**

21. Since Tourmaline Capital's founding in 2021, it has invested in, upleveled, and managed office properties that, on average, cost $150 million or more.

22. Tourmaline Capital invests in its office properties as part of a joint venture with a large, private-equity fund; a family office partner; a high-net-worth individual; and/or an international bank. Lenders, such as commercial banks and debt funds, provide a portion of the financing on each office property in which Tourmaline Capital invests.

23. After investing in office properties, Tourmaline Capital uplevels the properties by improving their amenities to make them more attractive spaces for corporate tenants.

24. Tourmaline Capital's portfolio currently consists of 12 office properties:

  i.  The Esplanade in Phoenix, Arizona.

  ii.  801 Brickell in Miami, Florida.

  iii.  One South in Charlotte, North Carolina.

  iv.  The Citigroup Center in Miami, Florida.

  v.  The Apex at Legacy in Dallas-Ft. Worth, Texas.

    vi.    Park 37 in Greenville, South Carolina.

    vii.   The Steelman Collective in Minneapolis, Minnesota.

   viii.   Landmark One in San Antonio, Texas.

    ix.   MidCity in Nashville, Tennessee.

    x.   777 Brickell in Miami, Florida.

    xi.   The Columbus Center in Coral Gables, Florida.

    xii.   1401 H in Washington, D.C.

**D. Tourmaline Capital is Not Aware of its Distinctive TOURMALINE Marks Causing Any Confusion Among its Sophisticated Customers**

25.    Tourmaline Capital uses its TOURMALINE Marks on the exterior and interior of its office properties; in connection with advertising on its website; while attending industry conferences and meetings; and in marketing collateral, which it distributes to third-party real-estate brokers to assist with securing tenants.

26.    Unlike residential owners or renters, the tenants—*i.e.*, Tourmaline Capital's customers—in Tourmaline Capital's office properties are sophisticated, corporate entities that seek modernized amenities and locations for their employees. The tenants/customers include, for example, corporations in the following industries: (i) financial services; (ii) information technology; (iii) real estate; (iv) engineering; (v) law; (vi) architecture; (vii) government agencies; and (viii) healthcare administrative services. To date, Tourmaline Capital has had over a thousand tenants.

27.    Other sophisticated entities that interact with Tourmaline Capital and its TOURMALINE Marks in the marketplace include: (i) large, private-equity funds, family offices, a high-net-worth individual, and international banks that co-invest with Tourmaline Capital in its

office properties and (ii) sophisticated lenders, such as debt funds and commercial banks, who finance Tourmaline Capital's office properties.

28.    Tourmaline Capital is not aware of its use of its TOURMALINE Marks causing any confusion among its tenants, conference attendees, brokers, co-investors, or lenders.

29.    For example, Tourmaline Capital is not aware of a single tenant signing a lease in one of Tourmaline Capital's office properties based on the mistaken belief that they were signing a lease in one of Plaintiff's shopping centers and/or that Plaintiff had some type of affiliation, association, and/or connection with Tourmaline Capital's office property(ies).

30.    As another example, Tourmaline Capital is not aware of a single tenant, conference attendee, broker, co-investor, or lender asking Tourmaline Capital if there is an affiliation, association, and/or connection between Plaintiff and Tourmaline Capital.

31.    As a further example, Tourmaline Capital is not aware of a single tenant, conference attendee, broker, co-investor, or lender—or any other person or entity—contacting Tourmaline Capital and thinking they were contacting Plaintiff.

32.    The lack of actual confusion between Tourmaline Capital and Plaintiff is not surprising: Plaintiff uses different marks to advertise and offer different services to different customers.

**E.  Unlike Tourmaline Capital, Plaintiff Invests in Shopping Centers**

33.    Plaintiff is a San Diego, California-based company that allegedly has been using the word mark "TOURMALINE CAPITAL" since 2011.

34.    Plaintiff's website also shows use of the inset logo:

35.     Unlike Tourmaline Capital, Plaintiff admittedly does not invest in office properties.

36.     According to Plaintiff's website, it "focuse[s] on the operation, repositioning, and redevelopment of retail and mixed-used properties in the Western US." Plaintiff describes those properties as "shopping centers."

37.     Unlike Plaintiff, Tourmaline Capital does not invest in shopping centers and does not intend to invest in or manage shopping centers.

38.     Tourmaline Capital is not aware of Plaintiff attending any conference or meetings that Tourmaline Capital also attended.

### F.   Plaintiff's Failure to Enforce its Alleged Trademark Rights in the Word "Tourmaline"

39.     Plaintiff and Tourmaline Capital are not alone in their use of the word "Tourmaline." Examples of third-party uses of "Tourmaline" in the real estate and investment industries include:

i.     Tourmaline Builders, which, like Plaintiff, is based in San Diego, California and has

been in business since 2011 [1]

ii.    Tourmaline Realty [2]

iii.   Tourmaline Real Estate [3]

iv.    Tourmaline (Orchard Addition) Real Estate[4]

v.     Tourmaline Real Estate LLC[5]

vi.    Tourmaline Properties LLC[6]

vii.   Tourmaline Property Investment LLC[7]

---

[1] *See* Doc. No. 19, Ex. 5.
[2] *Id*. at Ex. 6.
[3] *Id*. at Ex. 7.
[4] *Id*. at Exs. 8, 9.
[5] *Id*. at Ex. 10.
[6] *Id*. at Ex. 11.
[7] *Id*. at Ex. 12.

viii.   Tourmaline[8]

ix.   Tourmaline Partners [9]

x.   Tourmaline Capital Management [10]

xi.   Tourmaline Wealth Advisors [11]

40.    On information and belief, none of the third parties related to the examples of uses of the word "Tourmaline" shown and/or listed in Paragraph 39 of this Counterclaim are affiliates or subsidiaries of Plaintiff.

41.    On information and belief, Plaintiff was aware of the examples of third-party uses of the word "Tourmaline" shown and/or listed in Paragraph 39 of this Counterclaim prior to the commencement of this lawsuit.

42.    On information and belief, Plaintiff was not aware of the examples of third-party uses of the word "Tourmaline" shown and/or listed in Paragraph 39 of this Counterclaim prior to the commencement of this lawsuit.

43.    On information and belief, other than Tourmaline Capital, Plaintiff has not protested any third-party use of the word "Tourmaline," including, without limitation, the uses shown and/or listed in Paragraph 39 of this Counterclaim.

44.    On information and belief, Plaintiff is not a party to any type of agreement concerning the use of the word "Tourmaline" (including, without limitation, the examples shown and/or listed in Paragraph 39 of this Counterclaim), including, without limitation, a co-existence agreement, settlement agreement, license agreement, covenant not to sue, or similar instrument.

---

[8] *Id*. at Ex. 13.
[9] *Id*. at Ex. 14.
[10] *Id*. at Ex. 15.
[11] *Id*. at Ex. 16.

### G. Plaintiff's Delay in Filing This Lawsuit

45.     Nearly three-and-a-half years after Tourmaline Capital began using its TOURMALINE Marks in January 2021, and despite co-existing alongside Tourmaline Capital and other members of a crowded field, Plaintiff sent a letter to Tourmaline Capital on May 13, 2024, alleging that Tourmaline Capital's use of its TOURMALINE Marks infringed Plaintiff's TOURMALINE and TOURMALINE CAPITAL marks and demanded that Tourmaline Capital stop using its Marks.  This letter was the first time that Tourmaline Capital learned Plaintiff claimed to own trademark rights in the word "Tourmaline."

46.     On June 20, 2024, Plaintiff sent a follow-up email to Tourmaline Capital, wherein it attached a copy of the May 13 letter and stated "[w]e look forward to your response."  Doc. No. 3-1 at pgs. 35-6.  Plaintiff admits that, "[t]o date, [it] has not received any response to the [May 13] letter."  Doc. No. 1, ¶ 24.  Tourmaline Capital did not respond to Plaintiff's May 13 letter or June 20 email because it believed then—and now—that it was not (and is not) infringing Plaintiff's asserted marks.

47.     Nearly a *year* later, Plaintiff commenced this lawsuit and filed its preliminary-injunction motion on June 13, 2025.  *See* Doc. Nos. 1, 3-4.  Between June 20, 2024, and June 13, 2025, Plaintiff and Tourmaline Capital did not communicate.

48.     To remove this cloud from Tourmaline Capital's brand and Marks, it bring this Counterclaim for a declaration of no trademark infringement and no unfair competition under 15 U.S.C. §§ 1114 or 1125(a)(1)(A).

## <u>COUNTERCLAIM FOR RELIEF</u>

(*Declaration of No Trademark Infringement and*
*No Unfair Competition in Violation of 15 U.S.C. §§ 1114, 1125(a)(1)(A))*
(*Tourmaline Capital's Use of its TOURMALINE Marks*)

49.     Tourmaline Capital expressly incorporates the allegations in Paragraphs 1-48 of these Counterclaims as though fully set forth herein.

50.     Even if valid, Plaintiff's asserted "Tourmaline" and "Tourmaline Capital" word marks and logo are weak marks because of the crowded field of third parties in the United States that use the word "Tourmaline," including, for example, in the real estate and investment industries.

51.     Tourmaline Capital's TOURMALINE Marks create strikingly different overall commercial impressions in the marketplace than Plaintiff's asserted "Tourmaline" and "Tourmaline Capital" word marks and logo create in the marketplace.

52.     Plaintiff and Tourmaline Capital offer different services.  Plaintiff invests in shopping centers; whereas, in stark contrast, Tourmaline Capital invests in offices.  There is no likelihood of Tourmaline Capital expanding its offerings to include investing in shopping centers. On information and belief, Plaintiff does not intend to expand its offerings to include investing in offices.

53.     Plaintiff and Tourmaline have different customers and business partners. Tourmaline Capital's customers and business partners are sophisticated and discerning when making investment decisions.   On information and belief, Plaintiff's customers and business partners are sophisticated and discerning when making investment decisions.

54.     Plaintiff and Tourmaline Capital use different advertising and trade channels for their services.

55.    Tourmaline Capital is not aware of the use of its TOURMALINE Marks causing confusion among Tourmaline Capital's customers.

56.    Tourmaline Capital adopted and uses its TOURMALINE Marks in good faith.

57.    Based on the foregoing, Tourmaline Capital seeks a declaration that its use of its TOURMALINE Marks does not constitute trademark infringement or unfair competition in violation of 15 U.S.C. §§ 1114 or 1125(a)(1)(A).

## PRAYER FOR RELIEF

**WHEREFORE**, based on the foregoing, Tourmaline Capital hereby prays that this Court:

A.    Deny Plaintiff all of the relief requested in the Complaint;

B.    Declare that Tourmaline Capital has not engaged in trademark infringement or unfair competition in violation of 15 U.S.C. §§ 1114 or 1125(a)(1)(A);

C.    Declare that Tourmaline Capital is the "prevailing party" in this action for purposes of 15 U.S.C. § 1117(a);

D.    Declare that this is an "exceptional" case within the meaning of 15 U.S.C. § 1117(a);

E.    Award to Tourmaline Capital its reasonable attorneys' fees, costs, and expenses; and;

F.    Award to Tourmaline Capital any further relief that this Court deems just and equitable.

## JURY DEMAND

Tourmaline Capital requests a trial by jury for all issues so triable on its Counterclaim pursuant to FED R. CIV. P. 38(b) and 38(c).

Dated: August 7, 2025

*Of Counsel:*

Jonathan W. Thomas
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, NY 10017
(212) 801-9219
jonathan.thomas@gtlaw.com

<u>*/s/ Benjamin J. Schladweiler*</u>
Benjamin Schladweiler (#4601)
GREENBERG TRAURIG, LLP
222 Delaware Avenue, Suite 1600
Wilmington, DE 19801
(302) 661-7352
schladweilerb@gtlaw.com

*Counsel for Defendant Tourmaline Capital Partners, LLC*