IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TOURMALINE MANAGEMENT LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No. 25-740 (MN) |
| ) | |
| TOURMALINE CAPITAL PARTNERS, ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Stamatios Stamoulis, Richard C. Weinblatt, STAMOULIS & WEINBLATT, LLC, Wilmington, DE; Lawrence M. Hadley, Lara A. Petersen, GLASER WEIL FINK HOWARD JORDAN & SHAPIRO LLP, Los Angeles, CA – Attorneys for Plaintiff

Benjamin Schladweiler, GREENBERG TRAURIG, LLP, Wilmington, DE; Jonathan W. Thomas, GREENBERG TRAURIG, LLP, New York, NY – Attorneys for Defendants

August 13, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

Before the Court is Plaintiff Tourmaline Management LLC's ("Plaintiff") motion for a preliminary injunction against Defendant Tourmaline Capital Partners LLC ("Defendant"). (D.I. 3). Because Plaintiff has failed to make a clear showing of irreparable harm, the Court will DENY the motion.

## I. BACKGROUND

### A. The Parties

This case involves a battle between two real estate investment firms for use of the name "Tourmaline." Plaintiff Tourmaline Management is a Delaware-incorporated commercial real estate firm headquartered in San Diego, California. (D.I. 1 ¶ 4). Plaintiff's business involves "real estate management, investment, acquisition, and development services." (D.I. 4 ¶ 4). Since September 1, 2011, Plaintiff has gone by the name "Tourmaline Capital." (D.I. 3, Exs. A & B).

Defendant Tourmaline Capital Partners is a Delaware entity with its principal place of business in the Bryn Mawr suburb of Philadelphia, Pennsylvania. (D.I. 1 ¶ 5). Founded in January 2021, Defendant is a real estate firm that "invests in, uplevels, and manages office properties." (D.I. 17 ¶ 20). At present, Defendant's portfolio consists of at least 12 office properties across the country, valued at an average of $150 million or more. (*Id.* ¶¶ 20-24).

### B. The Dispute

On January 20, 2024, Plaintiff applied to the U.S. Patent and Trademark Office ("PTO") to register the "Tourmaline Capital" mark. (D.I. 3, Exs. A & B). Just two weeks later, on February 6, 2024, Defendant submitted its own applications to the PTO for the names "Tourmaline" and "Tourmaline Capital Partners." (*Id.*, Exs. C, D, E). After learning of Defendant's competing applications, Plaintiff filed a letter of protest with the PTO on May 13, 2024, objecting to Defendant's desired marks given its first-filer status. (D.I. 4 ¶ 9).

In line with those objections, on June 28 and July 3, 2024, the PTO issued office actions suspending Defendant's applications on the basis that Plaintiff had "prior-filed potentially conflicting pending applications." (D.I. 3, Ex. H at 1-2; *id.*, Ex I at 1-2) (brackets omitted). Plaintiff's trademark applications were ultimately approved on March 11, 2025 under U.S. Registration Nos. 7,718,863 and 7,718,864. (*Id.*, Exs. A & B). Defendant's applications were not.

On May 13, 2024, during the pendency of both applications, Plaintiff's attorney sent a letter to counsel for Defendant demanding that Defendant abandon its trademark applications, "[c]ease and desist from all further use of [Plaintiff's] intellectual property," and "[r]emove all such content pertaining to any of [Plaintiff's] intellectual property from all online forums," among other measures. (*Id.*, Ex. F at 2-3). Receiving no response, Plaintiff's counsel followed up by email on June 20, 2024, attaching the demand letter ("the Demand"). (*Id.*, Ex. G). Defendant did not respond to that communication either. (D.I. 4 ¶ 8; D.I. 17 ¶¶ 32-33). Eight days later, the PTO issued the first of its office actions suspending Defendant's trademark applications. (*See* D.I. 3, Exs. H, I, J).

On June 13, 2025, nearly a year later, Plaintiff filed the complaint in this action, asserting two counts for trademark infringement and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) ("the Complaint"). (D.I. 1). That same day, Plaintiff moved for a preliminary injunction and temporary restraining order preventing Defendant from continuing to use the Tourmaline moniker. (D.I. 3). There was no communication between the parties between the June 2024 Demand and the June 2025 Complaint. (D.I. 4 ¶ 8; D.I. 17 ¶ 35). On July 15, 2025, Defendant filed its opposition to Plaintiff's motion. (D.I. 16). On July 29, Plaintiff submitted its reply brief. (D.I. 21). The Court now addresses the motion.

## II. LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To prevail on a request for a preliminary injunction, the moving party must make a "clear showing" that: (1) it has a likelihood of success on the merits; (2) there is a risk of irreparable harm absent preliminary relief; (3) the balance of the equities are in its favor; and (4) the public interest is supported by the injunction. *Id.* at 20, 22; *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024). "The first two factors are the 'most critical.'" *Del. State Sportsmen's Ass'n*, 108 F.4th at 202 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). A failure to show either a likelihood of success or risk of irreparable harm, therefore, "necessarily result[s] in the denial of a preliminary injunction." *S. Camden Citizens in Action v. N.J. Dep't of Env't Prot.*, 274 F.3d 771, 777 (3d Cir. 2001) (citation omitted).

## III. DISCUSSION

### A. Irreparable Harm

"To establish irreparable harm, there must be a clear showing of immediate irreparable injury, or a presently existing actual threat." *Golden Fortune Imp. & Exp. Corp. v. Mei-Xin Ltd.*, No. 22-1710, 2022 WL 3536494, at *5 (3d Cir. Aug. 5, 2022) (internal quotation marks omitted); *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987). Accordingly, "[p]reliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights. Delay in seeking enforcement of those rights tends to indicate at least a reduced need for such drastic, speedy action." *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117-18 (3d Cir. 2013) (citation modified).

Here, Plaintiff waited until June 13, 2025 to file its Complaint and preliminary injunction motion – nearly a year after its last correspondence with Defendant on June 20, 2024.

3

(*See* D.I. 1; D.I. 3 & Exs. F, G). In the intervening period, there was no contact between the parties. (*See* D.I. 4 ¶ 8; D.I. 17 ¶ 35). Courts in the Third Circuit routinely find that a delay of this length is fatal to the irreparable harm showing in trademark infringement actions. *See, e.g.*, *H-1 Auto Care, LLC v. Lasher*, No. 21-18110 (ZNQ), 2022 WL 13003468, at *4 (D.N.J. Oct. 21, 2022) ("Plaintiff's 11-month delay in seeking relief demonstrates that its anticipated injuries do not constitute irreparable harm."); *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 383 (D.N.J. 2002) ("Such a delay – one full year – knocks the bottom out of any claim of immediate and irreparable harm."); *Warner Lambert Co. v. McCrory's Corp.*, 718 F. Supp. 389, 394-95 (D.N.J. 1989) ("[A one-year delay in bringing suit] can be taken as a factor tending to minimize [plaintiff's] claim of irreparable harm."). Many have rejected motions where the plaintiff dallied for far shorter a period; in some cases, "a delay of just weeks or months precludes a showing of irreparable harm." *Logic Tech. Dev. LLC v. Levy*, No. 17-4630 (MAS), 2021 WL 3884287, at *3 (D.N.J. Aug. 31, 2021); *Orson, Inc. v. Miramax Film Corp.*, 836 F. Supp. 309, 312 (E.D. Pa. 1993) ("Clearly plaintiff's [50-day] delay in filing the motion shows that irreparable harm, [after discovering defendant's trademark infringement], is not imminent as is required for a preliminary injunction."); *New Dana Perfumes Corp. v. The Disney Store, Inc.*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) ("[I]n the trademark infringement context, courts typically decline to grant preliminary injunctions in the face of unexplained delays of more than two months.") (internal quotation marks omitted); *Smart Vent Prods., Inc. v. Crawl Space Door Sys., Inc.*, No. 13-5691 (JBS), 2016 WL 4408818, at *12 (D.N.J. Aug. 16, 2016) ("[Plaintiff] sought the extraordinary relief it now seeks at best two months and at worst seven months after the events that form the lynchpin of its request for an injunction."); *EMSL Analytical, Inc. v. Testamerica Analytical Testing Corp.*, No. 05-5259 (RBK), 2006 WL 892718, at *13 (D.N.J. Apr. 4, 2006)

4

("[T]he six month delay in failing to seek injunctive relief [for the plaintiff's trademark claims] would be sufficient to preclude a finding of irreparable harm.").

Similarly telling is the fact that Plaintiff has apparently not asserted its trademark rights against any other potential third-party infringers, notwithstanding that there are at least a half-dozen other U.S. commercial real estate and investment firms that bear the name "Tourmaline." (D.I. 16 at 5 & n.15; D.I. 19, Exs. 5-16; *id.*, Ex. 17 at 4, 6) (listing entities such as "Tourmaline Partners," "Tourmaline Property Investment LLC," and "Tourmaline Real Estate LLC"). That is another measure of delay. *See Warner Lambert*, 718 F. Supp. at 394. As one court succinctly put it: "on the issue of irreparable harm, [plaintiff's] prior inaction against other [trademark infringers] is particularly relevant; not only does it suggest that [plaintiff] does not feel especially threatened by potentially infringing [third-parties], but also [plaintiff's] prior inaction against other major [competitors'] use of the disputed [mark] dilutes the equity of the court now using its coercive powers . . . to preliminarily enjoin defendant from [using the mark] plaintiff has idly watched other [industry players use] for years." *Id*.

True, Plaintiff only received approval from the PTO for its marks in March of this year, three months before the filing of the instant motion. (*See* D.I. 3, Exs. A & B). Nevertheless, "in the trademark infringement context, courts have declined to grant preliminary injunctions in the face of unexplained delays of more than two months." *New Dana Perfumes*, 131 F. Supp. 2d at 630 (internal quotation marks omitted); *Orson*, 836 F. Supp. at 312; *Smart Vent*, 2016 WL 4408818, at *12. And, in any event, Plaintiff acknowledges that it had a common law cause of action – at the least – when it warned Defendant multiple times of Defendant's alleged infringement and successfully opposed Defendant's competing trademark applications before the PTO in May and June of 2024. (D.I. 21 at 9-10). Thus, regardless of whether Plaintiff intended

to pursue common law or statutory claims, the upshot is the same: "[the] delay in seeking a preliminary injunction [is] sufficient proof that the risk of immediate irreparable harm did not exist." *Lanin*, 515 F. App'x at 118.

In sum, then, Plaintiff's motion for an injunction more than a year after discovering Defendant's infringement is like the Titanic pilot's tack after spotting the iceberg – a good instinct, but far too late. And here, as in the North Atlantic in 1912, that belated effort sinks the ship.

### B. Likelihood of Success on the Merits

"To obtain a preliminary injunction, the moving party must demonstrate *both* a likelihood of success on the merits *and* the probability of irreparable harm if relief is not granted." *Morton v. Beyer*, 822 F.2d 364, 367 (3d Cir. 1987). Irrespective of the movant's likelihood of success, therefore, "a party moving for preliminary injunctive relief must carry the burden of showing irreparable injury." *Hohe v. Casey*, 868 F.2d 69, 72 (3d Cir. 1989) (citation and alteration omitted). Because the Court has already found that Plaintiff cannot do so here, it need not evaluate the likelihood of success on the merits – or any of the other factors. *See, e.g.*, *S. Camden Citizens in Action*, 274 F.3d at 777; *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 192 (3d Cir. 1990) ("Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue.").

### IV. CONCLUSION

For the foregoing reasons, the Court will DENY Plaintiff's motion for a preliminary injunction (D.I. 3). An appropriate order will follow.